***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission MODIFIES the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in the Pre-Trial Agreement admitted into evidence as Stipulated Exhibit No. 1, as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On January 6, 2008, the employer-employee relationship existed between Plaintiff and Defendant-Employer.
3. Plaintiff's average weekly wage is $156.00, which generates a compensation rate of $104.00.
4. Broadspire is the compensation carrier on the risk.
5. The Industrial Commission Forms in this case were admitted into evidence as Stipulated Exhibit No. 2.
6. Plaintiff's medical records related to this claim were admitted into evidence as Stipulated Exhibit No. 3.
 *********** ISSUES
Plaintiff's issues on appeal are as follows:
1. Is Plaintiff's right elbow condition compensable?
2. Are Plaintiff's psychiatric conditions including PTSD and depression compensable?
3. Should Defendants be ordered to pay for the portable TENS unit prescribed by Dr. Godbout? *Page 3 
4. Should Defendants be ordered to pay for the aquatherapy that was prescribed by Dr. Jones?
5. Should Defendants be ordered to pay mileage reimbursements and a late payment penalty to Plaintiff?
6. Should Defendants be ordered to pay for the ultrasound treatment prescribed by Dr. Godbout?
7. Should the Commission order additional audiological testing pursuant to N.C. Gen. Stat. Section 97-89?
8. Should Defendants be ordered to reimburse Plaintiff for her out of pocket medical expenses and pay a late payment penalty?
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On January 6, 2008, Plaintiff Cynthia Vargas was receiving Social Security Disability benefits based upon multiple chronic conditions, including diabetes, COPD, fibromyalgia, and depression.
2. Despite her receipt of disability benefits Plaintiff was able to work on a limited, part-time basis for Defendant-Employer Securitas Security Services USA as a security guard whose duties involved patrolling a local pharmaceutical facility at night on foot. In addition to working part-time as a security guard, Plaintiff ran her own business which involved driving a flag car to escort oversized loads on the highways. Plaintiff was also able to occasionally work as a substitute teacher prior to January 6, 2008. *Page 4 
3. On January 6, 2008, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer when she slipped and fell down 13 cement stairs while patrolling the pharmaceutical plant. Plaintiff landed on her right side at the bottom of the steps and lost consciousness for approximately 10 minutes. Upon regaining consciousness, Plaintiff reported the incident to her supervisor via telephone and sought medical treatment at the Duke Health Raleigh Hospital Emergency Room for injuries to her head, neck, right knee, and right upper extremity.
4. Defendants initially admitted liability for "cerv and right shoulder pain, hit head" on a Form 60 dated January 28, 2008. Several months later Defendants filed an amended Form 60 admitting liability for injuries involving Plaintiff's "right shoulder, right knee, bilateral carpal tunnel syndrome, neck pain." Pursuant to the Form 60's, Plaintiff continues to receive temporary total disability benefits at the rate of $104.00 per week.
5. On January 10, 2008, Plaintiff came under the care of Gina Farringer, nurse practitioner, for treatment of her right shoulder, neck, and right knee pain as well as complaints of tingling and weakness in her hands. As Plaintiff's symptoms continued to worsen, she reported increased anxiety and difficulty dealing with the pain, which prompted Ms. Farringer to refer her to Lisa Fernandez for counseling.
6. Lisa Fernandez treated Plaintiff from June 11, 2008 to October 8, 2009 for symptoms of anxiety, major depressive disorder, and post-traumatic stress disorder. According to Ms. Fernandez, Plaintiff's transition to a state of total disability was very difficult for her emotionally. Plaintiff told Ms. Fernandez that her preexisting depression, which had been adequately controlled with medication prior to January 6, 2008, had worsened after her fall at work. Ms. Fernandez initially tried "eye movement desensitization reprocessing," or EMDR, for *Page 5 
treatment of the PTSD, without success. She then initiated cognitive behavioral therapy which was somewhat effective but did not result in complete resolution of Plaintiff's psychological symptoms.
7. Dr. David Jones, an orthopaedic surgeon practicing at The Bone and Joint Surgery Clinic, has been the authorized treating physician for treatment of Plaintiff's right shoulder and right knee complaints. On September 15, 2008, Dr. Jones performed arthroscopic surgery on Plaintiff's knee to repair what he had diagnosed as "acute on chronic lateral meniscal tear and medial meniscal degenerative fraying and tearing" related to the January 6, 2008 fall. On November 3, 2008, Dr. Jones performed further surgery to repair Plaintiff's right rotator cuff that was torn as a result of the January 6, 2008 fall. Plaintiff developed adhesive capsulitis after the shoulder surgery, with a re-tear of the supraspinatus muscle, which necessitated further shoulder surgery in June 2009.
8. Despite surgery Plaintiff continued to experience significant shoulder pain, which prompted Dr. Jones to recommend that Plaintiff see a pain management specialist. He also recommended that Plaintiff get a second opinion regarding her shoulder. On December 23, 2009, Dr. Jones wrote a prescription for Plaintiff to join the Rex Wellness Center so that she could participate in regular aquatic exercises for her knee and shoulder.
9. During the course of her treatment with Dr. Jones, Plaintiff developed problems with her right elbow. Dr. Jones explained that Plaintiff's right elbow pain was caused by her inability to effectively use the ball and socket joint of her shoulder after the surgery.
10. On October 2, 2008, Plaintiff came under the care of Jeff Lafuria, PA-C and Dr. Christopher Godbout at the Carolina Back Institute. Dr. Godbout's goal was to determine if there were any interventional treatments that would help eliminate the pain generators that were *Page 6 
contributing to Plaintiff's neck pain and headaches. He initiated a course of Botox injections that were successful in treating Plaintiff's headache pain. For Plaintiff's neck and scapular pain he recommended that she attend physical therapy to set up an adequate home exercise program. He also prescribed biweekly massage therapy and use of a portable TENS unit to alleviate pain and improve Plaintiff's mobility. When Plaintiff developed a palpable knot on her cervical spine, Dr. Godbout recommended a diagnostic ultrasound to determine if it was a complication of the Botox injections. During the course of his treatment of Plaintiff for her neck and headache pain Dr. Godbout also administered an injection into her gluteal area for treatment of low back pain. However, he did not causally relate the low back complaints to the January 6, 2008 fall.
11. On April 6, 2009, Plaintiff underwent an independent medical examination at Defendants' request with Dr. Eric Morse, a psychiatrist. Dr. Morse concluded that Plaintiff met all of the criteria for post-traumatic stress disorder related to her January 6, 2008 fall, including periods of inappropriate emotional responses, anger and low frustration tolerance, nightmares and flashbacks, and hyper-startled reflexes. Plaintiff told Dr. Morse that she had been suffering from headaches and hearing loss since the fall. Dr. Morse was of the opinion that Plaintiff was not malingering and that she was in need of psychiatric treatment.
12. On June 26, 2009, Plaintiff came under the care of Dr. Steven Prakken at HRC Pain Management. Dr. Prakken is an expert in the fields of psychiatry and pain management. Dr. Prakken instituted a course of pharmacological treatment to address Plaintiff's ongoing neck and shoulder pain. Because he has found that a combination of medication and therapy produces a much better outcome for patients suffering from psychological problems related to chronic pain, Dr. Prakken recommended that Plaintiff also see Dr. Wagaman, a behavioral psychologist, *Page 7 
to learn pain coping skills and cognitive behavioral techniques. It was also recommended that Plaintiff undergo a neuropsychiatric evaluation by Dr. Steketee for cognitive issues.
13. Dr. Steketee, a clinical neuropsychologist, performed an evaluation of Plaintiff over the course of two days starting on March 5, 2010. Based upon the testing she administered, she concluded that Plaintiff was suffering from "left neglect" and deficits in visual spatial skills as a result of the head injury she suffered on January 6, 2008. When she was deposed, Dr. Steketee testified that she was "very certain that the depression and anxiety she's experiencing right now are due to the accident and the changes that ensued as a result of that."
14. According to the stipulated medical records, the first time Plaintiff mentioned a problem with hearing loss to any medical provider was on August 19, 2008. Plaintiff was evaluated for hearing loss on October 7, 2008, by Dr. R. Glen Medders, an otolaryngologist. Dr. Medders was of the opinion that the results of his testing were consistent with sensorineural hearing loss related to the January 6, 2008 fall, given Plaintiff's history of no exposure to high-decibel noise and the onset of hearing loss immediately after the fall. However, based upon some inconsistencies in the testing which indicated that Plaintiff was either deliberately not answering the questions correctly or did not understand the instructions, Dr. Medders recommended follow-up audiological testing and possible hearing aid evaluation, neither of which was authorized by Defendants. While a head injury can cause hearing loss, and Plaintiff's frequency response in the audiogram was consistent with traumatic hearing loss as opposed to hearing loss caused by old age, Dr. Medders was unable to express an opinion regarding the likely cause of Plaintiff's hearing loss without a repeat audiogram. *Page 8 
15. The January 6, 2008 fall down the stairs either caused or significantly aggravated Plaintiff's right shoulder, right knee, right elbow, and neck injuries, as well as her bilateral carpal tunnel syndrome.
16. The January 6, 2008 fall down the stairs caused Plaintiff to develop post-traumatic stress disorder and either caused or significantly aggravated Plaintiff's anxiety and depression, the latter of which was adequately controlled with medication prior to the injury.
17. As a result of the January 6, 2008 fall, Plaintiff suffers from neuropsychological deficits involving visual spatial skills and a condition called "left neglect."
18. Plaintiff has not yet reached maximum medical improvement from all of the injuries she suffered as a result of the January 6, 2008 fall.
19. As a result of the January 6, 2008 injury by accident, Plaintiff remains unable to earn the same wages she was earning at the time of the injury in the same or any other employment.
20. Plaintiff is no longer self-employed in her flag car business and no longer works as a substitute teacher. Defendants concede that there are presently no issues pertaining to Plaintiff's past secondary employment.
21. The medical treatment and testing Plaintiff has received to date from Ms. Farringer, Ms. Fernandez, Dr. Prakken, Dr. Steketee, Dr. Godbout, Dr. Post, Dr. Szura, Dr. Jones, and Dr. Rich has been reasonable and necessary to effect a cure, give relief, and lessen the period of disability related to the injuries Plaintiff sustained on January 6, 2008, as has the physical therapy and massage therapy they have recommended and the surgical procedures they have performed. It is also reasonable and necessary that Plaintiff undergo a second opinion with either Dr. Speer or Dr. Singh. *Page 9 
22. Plaintiff's low back complaints are not causally related to the January 6, 2008 injury.
23. The portable TENS unit and the diagnostic ultrasound recommended by Dr. Godbout are reasonable and necessary to effect a cure, give relief, and/or lessen the period of disability resulting from Plaintiff's January 6, 2008 injury by accident.
24. The membership at Rex Wellness that Dr. Jones has prescribed so that Plaintiff can regularly participate in aquatherapy is reasonable and necessary to effect a cure, give relief, and/or lessen the period of disability resulting from Plaintiff's January 6, 2008 injury by accident.
25. Dr. Prakken's referral of Plaintiff to Dr. Wagaman for cognitive behavioral therapy is reasonable and necessary to effect a cure, give relief, and/or lessen the period of Plaintiff's disability from the January 6, 2008 injury by accident.
26. When this case was heard before the Deputy Commissioner, Plaintiff was claiming, inter alia, that she was permanently and totally disabled. In light of Plaintiff's position in this regard, Defendants' defense of this claim was not unreasonable nor was it grounded in unfounded litigiousness.
27. Plaintiff is at substantial risk of requiring future medical treatment as a result of the January 6, 2008 injury by accident.
28. There is no evidence in the record that the depositions scheduled by Defendants had to be scheduled because Defendants refused to stipulate to medical reports.
29. There is no evidence of record that the medical bills which remain unpaid have ever been "properly submitted" to Defendants for payment or that 60 days have elapsed since the bills were properly submitted. *Page 10 
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. On January 6, 2008, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted liability for Plaintiff's January 6, 2008 injury pursuant to N.C. Gen. Stat. § 97-18(b), which conferred upon Plaintiff a presumption that medical treatment is causally related to the January 6, 2008 injury. Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997), Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc.review improvidently allowed,360 N.C. 587, 634 S.E.2d 887 (2006).
3. "Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury."Young v. Hickory Business Furniture,353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000), quoting Click v.Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980). The greater weight of the competent medical evidence in the case at bar establishes that the following medical conditions were either caused or significantly aggravated by the January 6, 2008 injury and are therefore compensable: right shoulder, neck, right knee, right elbow, neuropsychological deficits involving visual spatial skills and left neglect, bilateral carpal tunnel syndrome, post-traumatic stress disorder, depression and anxiety.
4. Defendants shall pay medical compensation related to all of the conditions listed above, including but not limited to portable TENS unit, treatment with Dr. Wagaman, diagnostic ultrasound for knot on neck, second opinion with Dr. Speer or Dr. Singh, and membership to Rex *Page 11 
Wellness for aquatherapy. N.C. Gen. Stat. § 97-25. Defendants shall not be responsible for paying the bills incurred for the gluteal injections administered by Dr. Godbout.
5. Because Plaintiff remains unable to earn the same wages she was earning at the time of the injury in the same or any other employment, she remains totally disabled and entitled to ongoing benefits pursuant to N.C. Gen. Stat. § 97-29. However, inasmuch as she has not yet reached maximum medical improvement, and in the absence of any evidence that her total loss of wage earning capacity is permanent, she is not entitled to an award of permanent and total disability benefits at this time.
6. Plaintiff shall be entitled to future medical compensation pursuant to N.C. Gen. Stat. § 97-25.1.
7. Plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 because Defendants' defense of this claim was not unreasonable or grounded in unfounded litigiousness.Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
8. In the absence of an unreasonable refusal to stipulate to medical records, neither N.C. Gen. Stat. § 97-88.1 nor Rule 612(2) of the Rules of the Industrial Commission specifically authorizes the Commission to assess attorney's fees or costs because Defendants deposed multiple medical providers after the hearing. Defendants have already been ordered to pay the expert witness fees, the court reporters' fees, and the cost of the original transcripts that were sent to the Industrial Commission. In light of the restrictions on Defendants' right to communicate with medical providers at the time this case was tried, and given the substantive information that was elicited by both parties at each deposition, the Commission in its discretion denies Plaintiff's request that Defendants be assessed additional costs and attorney's fees. *Page 12 
9. N.C. Gen. Stat. § 97-18(i) provides for a ten percent late payment penalty when the bill of "a provider of health care" is not paid within 60 days. With regard to Plaintiff's request for a ten percent penalty for late payment of mileage reimbursement, the Commission concludes that the provisions of N.C. Gen. Stat. § 97-18(i) do not apply to medical travel reimbursement requests. Therefore, Plaintiff's request for a ten percent penalty is denied.
10. Pursuant to N.C. Gen. Stat. § 97-89, Defendants shall authorize Plaintiff to return to Dr. Medders for a repeat audiological evaluation and hearing aid evaluation. In the event the parties cannot agree on the compensability of Plaintiff's alleged hearing loss after the evaluation by Dr. Medders, an order will be entered directing the parties to depose Dr. Medders and to submit further written contentions on the issue of the compensability of Plaintiff's alleged hearing loss.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Defendants shall continue to pay Plaintiff temporary total disability benefits at the rate of $104.00 per week until further order of the Industrial Commission, subject to the attorney fee hereinafter approved for Plaintiff's counsel.
2. Defendants shall pay all medical expenses incurred by Plaintiff for treatment or evaluation of the following injuries: right shoulder, right elbow, right knee, neck, bilateral carpal tunnel syndrome, post-traumatic stress disorder, depression, anxiety, and neuropsychological deficits in visual spatial skills and left neglect, when bills for the same are either approved by the Industrial Commission or properly submitted by the provider for payment. Defendants shall not *Page 13 
reimburse Plaintiff for any out of pocket medical expenses she incurred. Rather, Defendants shall pay the provider and the provider in turn shall reimburse Plaintiff what she paid for the treatment in question.
3. Going forward, Defendants shall pay all properly reimbursable medical travel expenses submitted by Plaintiff within 60 days of their submission to Defendants.
4. A fee of 25 percent of the compensation awarded above is hereby approved for Plaintiff's counsel and shall be paid by forwarding every fourth compensation check directly to Plaintiff's counsel. Plaintiff's counsel's request for additional attorney's fees as a sanction is hereby DENIED.
5. The parties shall advise the undersigned within 30 days of receipt of this Opinion and Award as to whether they were able to resolve the hearing loss issue, so that the appropriate order may be timely entered regarding its compensability. The Full Commission shall retain jurisdiction of this claim until such time as that issue is resolved.
This the ___ day of August 2011.
 S/___________________ TAMMY R. NANCE COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1